UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In re:                                                      Chapter 7

Hyung Taek Hong and
Yeon Og Cho,                                                Case No. 8-19-72287-las

                        Debtor.
-------------------------------------------------------------X
Allan B. Mendelsohn, Trustee of the Estate
of Hyung Taek Hong and Yeon Og Cho,

                        Plaintiff,                          Adv. Pro. No. 8-20-08003-las

                -v-

Nationstar Mortgage d/b/a Mr. Cooper,

                        Defendant.
-------------------------------------------------------------X

<u>MEMORANDUM DECISION AFTER TRIAL</u>

I.    Introduction

        Plaintiff Allan B. Mendelsohn, Esq., as chapter 7 trustee of the bankruptcy estate of

Hyung Taek Hong ("Hyung") and Yeon Og Cho (together, the "Debtors"), commenced this

adversary proceeding against defendant Nationstar Mortgage LLC d/b/a Mr. Cooper seeking

to avoid and recover prepetition payments made by Debtors to defendant in the aggregate

sum of $121,766.03 (the "Transfers"). Specifically, plaintiff asserts actual and constructive

fraudulent transfer causes of action under 11 U.S.C. §§ 544(b) and 548(a)(1)[1] and New York

Debtor and Creditor Law §§ 273, 275, 276, and 278.[2] Plaintiff also seeks to recover attorneys'

---

[1] All statutory references to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq., will hereinafter be referred to as "§ (section number)."

[2] All statutory references to New York Debtor and Creditor Law will hereinafter be referred to as "NYDCL § (section number)." Article 10 (§§ 270-281) of the NYDCL is New York's codification of the Uniform Fraudulent Conveyance Act ("NY UFCA"). The NY UFCA governs transfers made, or obligations incurred, before April 4, 2020. The New York Uniform Voidable Transactions Act, which replaced the NY UFCA, became effective on April 4, 2020 and applies to transfers made or obligations incurred thereafter. Here, the challenged Transfers occurred prior to April 2020 and are thus governed by the NY UFCA.

fees from defendant pursuant to NYDCL § 276-a. In addition, plaintiff asserts an unjust enrichment claim against defendant for its receipt of the Transfers.

For its part, defendant acknowledges receipt of the Transfers. Nevertheless, it argues that the Transfers were made by Debtors in lieu of rent owed to Hyung's brother, Jin H. Hong ("Jin"), the owner of the real property where Debtors resided when the Transfers were made and the obligor under the mortgage indebtedness to defendant. In short, defendant argues that plaintiff's constructively fraudulent claim must fail because rent in the amount of the monthly mortgage debt was paid to defendant rather than to Jin and Debtors received value in exchange for the payment of rent as they resided at the real property. Defendant also argues that plaintiff cannot avoid and recover the Transfers under an actual fraud theory as the circumstances surrounding the Transfers fail at every level to indicate fraudulent intent. Lastly, defendant argues that (i) plaintiff's claim under § 544(b) must fail because plaintiff has not identified the actual unsecured creditor whose rights plaintiff now seeks to assert, and (ii) because Debtors received value in exchange for the Transfers, defendant has not been unjustly enriched.

The Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and the Standing Order of Reference entered by the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 157(a), dated August 28, 1986, as amended by Order dated December 5, 2012. This is a core proceeding under 28 U.S.C. § 157(b)(2)(H). Each of the parties has either expressly or impliedly consented to this Court's exercising authority over this matter and entry of a final order or judgment by this Court. *See Wellness Int'l Network, Ltd. v. Sharif*, 135 S.Ct. 1932 (2015).

The Court observed carefully the demeanor and testimony of the witnesses and has thoroughly reviewed the parties' submissions and the trial record. This decision constitutes the Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules

of Civil Procedure, made applicable here by Bankruptcy Rule 7052. To the extent that a finding of fact includes a conclusion of law, it is deemed a conclusion of law and vice versa. For the reasons set forth below, the Court concludes that plaintiff has failed to meet his burden with respect to each claim alleged in the amended complaint. Accordingly, the Court enters judgment for defendant.

## II.    Procedural History

Plaintiff commenced this adversary proceeding by the filing of a complaint on January 3, 2020. [Dkt. No. 1]. The amended complaint, filed on January 6, 2020 ("Amended Complaint"), alleges (i) actual and constructive fraudulent transfer claims under § 544(b) and NYDCL §§ 273, 275, and 276, (ii) a constructive fraudulent transfer claim under § 548(a)(1),[3] and (iii) a common law claim of unjust enrichment. [Dkt. No. 3]. The fraudulent transfer claims and the common law claim of unjust enrichment arise out of the Transfers made by Debtors to defendant during the period September 9, 2013 to March 11, 2018. Specifically, the Amended Complaint asserts ten causes of action: (1) constructive fraud under  § 544(b) and NYDCL  §§ 273 and 275 (First and Third Causes of Action), (2) intentional fraud under § 544(b) and NYDCL  § 276 (Fifth Cause of Action), (3) recovery of the Transfers, once avoided, under § 550 and NYDCL § 278 (Second, Fourth, Sixth and Ninth Causes of Action), (4) recovery of attorneys' fees under NYDCL § 276-a (Seventh Cause of Action), (5) constructive fraud under § 548(a)(1) (Tenth Cause of Action), and (6) unjust enrichment (Eighth Cause of Action).

At trial, plaintiff did not argue or present evidence in support of his claim to avoid and recover the Transfers under NYDCL § 275 (Third Cause of Action) and § 276 (Fifth Cause

---

[3] Although the Amended Complaint asserts a cause of action for actual fraud under NYDCL § 276, it asserts only a constructively fraudulent transfer claim under § 548(a)(1). *See* Amended Complaint (Tenth Cause of Action). [Dkt. No. 3].

of Action). Nor did plaintiff introduce evidence to support a demand for attorneys' fees under NYDCL § 276-a (Seventh Cause of Action). Rather, at trial, plaintiff placed primary emphasis on whether the Transfers may be avoided as constructively fraudulent under § 544(b) and NYDCL § 273 and § 548(a)(1)(B). Because this became the central issue at trial, plaintiff's assertion that Debtors did not receive fair consideration or reasonably equivalent value in exchange for the Transfers was the predominant argument addressed by the parties and the focus of the trial testimony and exhibits introduced into evidence.

III.    Facts

The following facts are based on the trial record, which includes the parties' Joint Pre-Trial Statement ("JPTS") [Dkt. No. 44].[4] The facts are largely undisputed, and resolution of the dispute requires only a handful of facts.

A.  Stipulated Facts

Debtors filed for relief pursuant to chapter 7 of the Bankruptcy Code on March 20, 2019 ("Petition Date"). [JPTS ¶ 1]. As of the Petition Date, the Debtors resided at 14 Arielle Court, Islandia, New York ("Real Property"). [JPTS ¶ 3]. Defendant is the holder of a note and mortgage dated March 25, 2005 in the amount of $256,000.00 (the "Loan"), which is secured by an interest in the Real Property. [JPTS ¶ 4]. Debtors do not have any ownership interest in the Real Property. [JPTS ¶ 5]. Jin is the fee owner of the Real Property [JPTS ¶ 6], and the mortgagor/borrower under the Loan [JPTS ¶ 8]. Debtors remitted payments on the Loan to defendant. [JPTS ¶ 9].

---

[4] The parties stipulated to certain facts in their JPTS. For convenience, the Court will refer to the stipulated facts as "JPTS ¶ __." Additionally, "Tr." will refer to the trial transcript. [Dkt. No. 65]; "PX." refers to exhibits introduced at trial by plaintiff, and "DX" refers to exhibits introduced at trial by defendant.

B.  Trial Testimony

Here, the Court summarizes the pertinent testimony of the witnesses at trial. Plaintiff presented three fact witnesses – Hyung, Jin, and Alan Blunt ("Blunt"), Senior Principal of Litigation Support for defendant. Defendant cross-examined all three of plaintiff's witnesses. The Court credits the relevant testimony of each witness. The Court carefully considered whether any basis for discrediting the witnesses' testimony existed but found none. "As the finder of fact, the Court is entitled to make credibility findings of the witnesses and testimony." *Merck Eprova AG v. Gnosis S.p.A.*, 901 F. Supp. 2d 436, 448 (S.D.N.Y. 2012), *aff'd*, 760 F.3d 247 (2d Cir. 2014); *see also Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 95 (2d Cir. 2012) ("[A]s trier of fact, the judge is entitled, just as a jury would be, . . . to believe some parts and disbelieve other parts of the testimony of any given witness.") (internal quotation marks and citations omitted); *Newman v. Herbst*, No. 09-cv-4313 (TLM), 2011 WL 684165, at *1 (E.D.N.Y. Feb. 15, 2011) ("In any bench trial, the trial judge has to evaluate the credibility of the witnesses that testify, the witnesses' demeanor, any previous inconsistent statements by a witness, as well as the witness's explanation for any such inconsistent statements.").

1.  Jin H. Hong

Jin is Hyung's brother. Tr. 10:13-15. He purchased the Real Property in 2004. Tr. 9:18-20. Jin resided at the Real Property for six years and made payments to defendant under the Loan before moving to New Jersey where he works. Tr. 10:4-24, 12:15, 13:1. Debtors currently reside at the Real Property with Jin's mother. Tr. 10:10-19. Debtors entered into a written lease agreement with Jin in 2010.[5] Tr. 19:2-3. Jin testified that under the lease agreement, Debtors paid rent by paying the monthly mortgage debt to defendant. Tr. 19:10-11. According to Jin, Debtors paid the mortgage debt each month to defendant in lieu of rent. Tr. 19:12-16.

---

[5] Neither party included the lease agreement as an exhibit in the JPTS and it was not produced at trial.

Jin testified that he believed that rent paid by Debtors comported with rents in the area. Tr. 20:2-4.[6]

2.  Hyung Taek Hong

Hyung has lived at the Real Property since 2004, Tr. 21:23-24, and pays rent to his brother for use of the house. Tr. 21:25-22:2, 29:24-25, 30:1. Hyung pays $2,200 per month in rent. Tr. 22:3-4, :9-10. Hyung testified that he pays the rent directly to defendant by check or online. Tr. 22:8-13, 30:2-4. According to Debtors' 2017 income tax return, Hyung had adjusted gross income of $39,321. Tr. 24:6-9, 25:1-2; PX 1. Hyung reported $45,934 of adjusted gross income on his 2018 tax return. Tr. 24:21-24, 25:1-2; PX 2. Hyung used the checking account of his company, EF Insurance Tech Corporation,[7] to make payments to defendant from time to time when he didn't have sufficient funds in his personal bank account. Tr. 27:8-14; PX 4. Hyung testified that he had money to pay his other bills. Tr. 31:7. He and his wife filed for bankruptcy because of credit card debt. Tr. 31:24-25.

3.  Alan Blunt

Blunt testified that defendant does not look to the source of any mortgage payments received. Tr. 34:13-15. He testified that defendant does not have a written policy concerning the source of mortgage payments. Tr. 34:23. Blunt further testified that, in general, mortgage payments are either made online, by check, or Western Union, and there is always a specific amount associated with the payment and an account number. Tr. 35:3-6. Blunt was unaware of any reason why defendant would not accept payment from a third party. Tr. 36:19-21.

---

[6] No other evidence, testimonial or otherwise, was introduced at trial concerning the rental market.

[7] The customer's name on the statements of Shinhan Bank is "EM Security Tech Corp." PX 4.

IV.    Discussion

Plaintiff has alleged multiple causes of action in this adversary proceeding and seeks to avoid and recover the Transfers as constructive or intentional fraudulent transfers under §§ 544(b), 548(a)(1), and 550. Plaintiff also demands attorneys' fees under NYDCL § 276-a. In addition, plaintiff asserts a common law claim of unjust enrichment. The Court first considers the legal principles applicable to commencement of an action under § 544(b)(1), which is derivative in nature, and the NYDCL. The Court will then discuss each cause of action in turn.

A.  11 U.S.C. § 544(b)(1)

Section 544(b)(1) authorizes a trustee to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim . . . ." 11 U.S.C. § 544(b)(1). Hence, under § 544(b), the trustee may avoid a transfer of an interest of the debtor or an obligation incurred by the debtor that is voidable under applicable nonbankruptcy law. The parties do not dispute that in this action the "applicable law" for purposes of § 544(b) is the NYDCL, and that the action was timely commenced under § 546(a).[8] "[A]s long as the statute of limitations has not expired as of the petition date, a trustee is permitted to bring New York fraudulent conveyance actions looking back six years from the [petition date] in accordance with section 544(b) at *any* point during the two-year period set out in section 546(a)." *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 454 B.R. 317, 337 (Bankr. S.D.N.Y. 2011) (emphasis in original). Pursuant to § 550(a), "to the extent that a transfer is avoided under section 544 . . . the trustee may recover, for the benefit of the estate, the property transferred, or, if the

---

[8] Section 546(a) provides in relevant part that "[a]n action or proceeding under section 544 . . . of this title may not be commenced after the earlier of – . . . (1) the later of – (A) 2 years after the entry of the order for relief; or (B) 1 year after the appointment or election of the first trustee . . . or (2) the time the case is closed or dismissed." 11 U.S.C. § 546(a).

court so orders, the value of such property, from . . . (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made . . . ." 11 U.S.C. § 550(a).

The power given to a trustee under § 544(b) to avoid a transfer or obligation is derivative, that is, there must be an actual existing creditor holding an allowable unsecured claim who would have had that right outside of bankruptcy. *Mendelsohn v. Kovalchuk (In re APCO Merch. Servs., Inc.)*, 585 B.R. 306, 314 (Bankr. E.D.N.Y. 2018). "In order for a trustee to maintain an action for avoidance of a fraudulent conveyance, the trustee must show that at least one of the present unsecured creditors of the estate holds an allowable claim, against whom the transfer or obligation was invalid under applicable state or federal law." *Young v. Paramount Commc'ns Inc. (In re Wingspread Corp.)*, 178 B.R. 938, 945 (Bankr. S.D.N.Y. 1995).[9] *See also MC Asset Recovery, LLC v. S. Co.*, No. 1:06-CV-0417-BBM, 2006 WL 5112612, at *3 (N.D. Ga. Dec. 11, 2006) ("[I]n order to maintain an avoidance action under § 544(b), a trustee must demonstrate the existence of a so-called 'golden' or 'triggering' creditor: (1) an unsecured creditor, (2) who holds an allowable unsecured claim under section 502, and (3) who could avoid the transfers at issue under applicable (i.e., state) law."); *In re Archdiocese of Milwaukee*, 483 B.R. 855, 862 (Bankr. E.D. Wis. 2012) ("The trustee's rights under § 544(b) are limited to the 'rights of an existing unsecured creditor because § 544(b) rights are completely derivative of those of an actual unsecured creditor.'") (quoting *Lippe v. Bairnco Corp.*, 225 B.R. 846, 852 (S.D.N.Y. 1998)). "Further, the trustee will be able to attack the transfer only to the extent a creditor with an allowable claim can avoid the transfer under

---

[9] The court in *Geron v. Schulman (In re Manshul Constr. Corp.)*, No. 96B44080 (JHG), 2000 WL 1228866 (S.D.N.Y. Aug. 30, 2000), observed that "[c]ourts disagree as to whether a trustee is required to establish the existence of a specific creditor in order to have standing under Section 554(b)." *Id.* at *44. There, the court compared *Young* (trustee must name actual creditor) with *In re Leonard*, 125 F.3d 543 (7th Cir. 1997) (trustee need not articulate specific creditor). However, the court determined that it was not necessary to resolve the issue because the evidence at trial established unsecured creditors of the debtor existed at the time of the transfers, and those creditors could have avoided the transfers at issue under state fraudulent conveyance law. *Manshul Constr. Corp.*, at *44-45.

applicable state law." *Id.* at 862-3. *See also Rafool v. Propack Sys., LLC (In re Fleming Packaging Corp.)*, Bankr. No. 03-82408, Adv. No. 05-8124, 2007 WL 1021884, at *9 (Bankr. C.D. Ill. Mar. 30, 2007) ("When bringing an avoidance action under Section 544(b) . . . the extent of the trustee's rights is determined entirely by state law."); *Schaps v. Bally's Park Place, Inc.*, 58 B.R. 581, 584 (E.D. Pa. 1986) ("[A] prerequisite to a Section 544(b) suit is the existence of an actual creditor holding an unsecured claim who could have avoided the transfer under state law."), *aff'd*, 815 F.2d 693 (3d Cir. 1987); COLLIER ON BANKRUPTCY ¶ 544.06(1) (Richard Levin & Henry J. Sommer eds., 16th ed. 2022) ("If there are no creditors against whom the transfer is voidable under the applicable law, the trustee is powerless to act under section 544(b)(1)."). Because a trustee must stand in the shoes of an actual creditor, the trustee is subject to the same defenses a transferee would have in a state fraudulent conveyance action brought by the actual creditor. *Kovalchuk*, 585 B.R. at 314 (citing Smith *v. Am. Founders Fin., Corp.*, 365 B.R. 647, 659 (S.D. Tex. 2007); *Davis v Willey (In re Willey)*, 263 F. 588, 589 (N.D. Cal. 1920), *aff'd*, 273 F. 397 (9th Cir. 1921)).

The burden is on plaintiff to show that he has standing under § 544(b) to bring this action. *Young*, 178 B.R. at 945; *see also Silverman v. Sound Around, Inc. (In re Allou Distribs., Inc.)*, 392 B.R. 24, 31 (Bankr. E.D.N.Y. 2008). Here, plaintiff contends that Debtors were not paying their credit card debts as they came due but did not identify the qualifying creditor in his Amended Complaint,[10] nor did he prove the existence of an actual, qualifying creditor at

---

[10] At the motion to dismiss stage, courts have found that a § 544(b)(1) cause of action survives even if the trustee does not identify, in the complaint, a specific creditor holding an allowable unsecured claim at the time of the transfer and the filing of the complaint. *Picard v. Estate of Stanley Chais (In re Bernard L. Madoff Inv. Sec. LLC)*, 445 B.R. 206 (Bankr. S.D.N.Y. 2011); *Musicland Holding Corp. v. Best Buy Co. (In re Musicland Holding Corp.)*, 398 B.R. 761, 780 (Bankr. S.D.N.Y. 2008). However, a trustee "must at least provide facts from which it can be plausibly concluded that there is at least one legitimate creditor of the estate." *Miller v. CSFB (In re Refco, Inc. Sec. Litig.)*, No. 07 MDL 1902 GEL, 2009 WL 7242548, at *10 (Bankr. S.D.N.Y. Nov. 13, 2009) (report of special master), report and recommendation adopted sub nom. *Miller v. CSFB (In re Refco Sec. Litig.)*, No. 07 MDL 1902 (JSR), 2010 WL 5129072 (S.D.N.Y. Jan. 12, 2010). *See also In re RCM Global Long Term Capital Appreciation Fund, Ltd.*, 200 B.R. 514, 524 (Bankr. S.D.N.Y. 1996) (finding that plaintiff could survive a motion to dismiss by

trial.[11]  Because the power given to a trustee under § 544(b) permits the trustee to stand in the shoes and assert the rights of an actual, existing creditor holding an allowable unsecured claim, proof of the existence of a creditor who could have avoided the challenged Transfers under the NYDCL is central to plaintiff's actual and constructive fraudulent conveyance causes of action under § 544(b) and NYDCL §§ 273, 275, 276 and 278. *Kovalchuk*, 585 B.R. at 315; *see also Young*, 178 B.R. at 946 ("[B]efore a trustee is able to utilize applicable state or federal law referred to in Section 544(b), there must be an allegation and ultimately a proof of the existence of at least one unsecured creditor of the Debtor who at the time the transfer occurred could have, under applicable local law, attacked and set aside the transfer under consideration.") (quoting *Smith v. Shoemaker (In re Smith)*, 120 B.R. 588, 590 (Bankr. M.D. Fla. 1990)).  Plaintiff has not satisfied this requirement.  Accordingly, the Court finds that plaintiff has failed to present evidence sufficient to establish standing to bring this action under state fraudulent conveyance law against defendant.

Although the Court concludes that plaintiff has failed to identify the actual unsecured creditor on whose rights he is depending for purposes of commencing an action under § 544(b), for the sake of completeness, the Court will address plaintiff's claims under § 544(b) and the NYDCL. For the following reasons, even if plaintiff had established the existence of the "golden" or "triggering" creditor, plaintiff has not met his burden of proof on the elements of actual and constructive fraud under § 544(b) and the NYDCL.

---

pleading, generally, the existence of a triggering creditor and may provide proof of such creditor's existence later in the case).

[11] Even if plaintiff plead the existence of an unsecured creditor generally for purposes of Federal Rule of Civil Procedure 8(a), *see In re RCM Global*, 200 B.R. at 523-24 (pleading the existence of an unsecured creditor with an allowable claim is sufficient), he nevertheless must prove the existence of the actual creditor on whose rights he is depending at trial, *Musicland*, 398 B.R. at 780 ("Thus, *RCM* supports the proposition that the plaintiff may plead the existence of the qualifying creditor generally, and prove the existence of an actual, qualifying creditor at trial.").

Additionally, as discussed below, the evidence at trial failed to establish that (i) payments aggregating $46,532.11 made within two years of the Petition Date must be avoided as constructively fraudulent under § 548(a)(1)(B), and (ii) defendant was unjustly enriched by the Transfers.

### B. Constructive Fraudulent Conveyance Claims

#### 1. Burden of Proof

Plaintiff has the burden of proof to present evidence in support of the allegations in the Amended Complaint and, in the case of his cause of action for constructive fraud, to prove those allegations by a preponderance of the evidence. *Kramer v. Chin (In re Chin)*, 492 B.R. 117, 126 (Bankr. E.D.N.Y. 2013); *Togut v. RBC Dain Correspondent Servs. (In re S.W. Bach & Co.)*, 435 B.R. 866, 875 (Bankr. S.D.N.Y. 2010). "The burden of showing something by a preponderance of the evidence . . . simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence . . . ." *Concrete Pipe and Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 622 (1993); *see also Metro. Stevedore Co. v. Rambo*, 521 U.S. 121, 137 n.9 (1997).

#### 2. NYDCL §§ 272-275

A conveyance by a debtor may be avoided as constructively fraudulent if made without fair consideration under NYDCL § 272 and one of the following additional elements has been established: (i) the debtor was insolvent or was rendered insolvent as a result of the transfer, NYDCL § 273; (ii) the debtor was left with unreasonably small capital, NYDCL § 274; or (iii) the debtor intended or believed it would incur debts beyond its ability to pay such debts as they matured, NYDCL § 275. *See Sharp Int'l Corp. v. State Street Bank and Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 53 (2d Cir. 2005); *Liberty Mut. Ins. Co. v. Horizon Bus Co., Inc.*, No. CV 10–0449(JS)(WDW), 2011 WL 1131098, at *4 (E.D.N.Y. Feb. 22, 2011), *R. & R.*

*adopted by* 2011 WL 1136270 (E.D.N.Y. Mar. 13, 2011). Under NYDCL §§ 273-275, "a transfer made without fair consideration constitutes a fraudulent conveyance, regardless of the intent of the transferor." *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 633 (2d Cir. 1995) ("*HBE Leasing I*"); *see also Sharp*, 403 F.3d at 53.

As noted above, at trial, plaintiff did not present evidence to show that the Debtors intended or believed that they would incur debts beyond their ability to pay when the debts matured. Accordingly, the Court need not and does not reach the issue of whether the Transfers may be avoided under NYDCL §275, and the following discussion is limited to plaintiff's argument that he may recover the Transfers as constructively fraudulent under NYDCL § 273.

Section 273 provides that "[e]very conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." N.Y. DEBT. & CRED. LAW § 273. "Fair consideration" is defined in NYDCL § 272, which provides, in part, that: "[f]air consideration is given for property . . . [w]hen in exchange for such property . . . as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied." N.Y. DEBT. & CRED. LAW § 272. In discussing the fair consideration test, the Second Circuit explained that "[t]he fair consideration test 'is profitably analyzed as follows: (1) . . . the recipient of the debtor's property[] must either (a) convey property in exchange or (b) discharge an antecedent debt in exchange; and (2) such exchange must be the 'fair equivalent' of the property received; and (3) such exchange must be 'in good faith.'" *Sharp*, 403 F.3d at 53-54 (quoting *HBE Leasing Corp. v. Frank*, 61 F.3d 1054, 1058-59 (2d Cir. 1995) ("*HBE Leasing II*")). Fair consideration under NYDCL requires

both an exchange of fair value and good faith.[12] *See* NYDCL § 272(a); *Mendelsohn v. Jacobowitz (In re Jacobs)*, 394 B.R. 646, 669 (Bankr. E.D.N.Y. 2008). Fair consideration is given so long as the consideration "is not 'disproportionately small' as compared to the value of the transferred property." *Sec. Inv'r Prot. Corp. v. Rossi (In re Cambridge Capital, LLC)*, 331 B.R. 47, 63 (Bankr. E.D.N.Y. 2005) (quoting *Lippe v. Bairnco Corp.*, 249 F. Supp. 2d 357, 377 (S.D.N.Y. 2003)). As stated by the Second Circuit:

> [T]he question of reasonably equivalent value is determined by the value of the consideration exchanged between the parties at the time of the conveyance or incurrence of debt which is challenged. In determining whether the value received by one party is so disproportionately small as to constitute a lack of fair consideration, the court need not strive for mathematical precision but must keep the equitable purposes of the statute firmly in mind, recognizing that any significant disparity between the value received and the obligation assumed . . . will have significantly harmed the innocent creditors of that [party].

*Liquidation Trust v. Daimler AG (In re Old Carco LLC)*, 509 F. App'x 77, 78 (2d Cir. 2013) (internal citations and quotations omitted). *Compare Murdock v. Plymouth Enters., Inc.* (*In re Curtina Int'l, Inc.*), 23 B.R. 969, 973 (Bankr. S.D.N.Y. 1982) (finding significantly reduced sales price paid by defendant to the debtor for perishable goods to be fair consideration and reasonably equivalent value under the circumstances where defendant was the only buyer, and the perishable goods took a long time to sell) *with Kittay v. Flutie N.Y. Corp.* (*In re Flutie N.Y. Corp.*), 310 B.R. 31, 53 (Bankr. S.D.N.Y. 2004) (finding payments received by debtor's principal allegedly in lieu of his annual salary did not constitute fair consideration where the

---

[12] Courts have noted that "reasonably equivalent value" under § 548(a)(1)(B) and "fair consideration" under NYDCL § 272 have the same fundamental meaning, *Geltzer v. Xaverian High School (In re Akanmu)*, 502 B.R. 124, 130-31 (Bankr. E.D.N.Y. 2013) (citing *Picard v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*, 458 B.R. 87, 110 (Bankr. S.D.N.Y. 2011)), and courts use the terms interchangeably, *see Geron v. Palladin Overseas Fund, Ltd. (In re AppliedTheory Corp.*, 323 B.R. 838, 840-41 (Bankr. S.D.N.Y.), *aff'd*, 330 B.R. 362 (S.D.N.Y. 2005). The difference, however, is that NYDCL § 272 requires that "fair consideration" be given in good faith. *See Nisselson v. Softbank AM Corp. (In re MarketXT Holdings Corp.)*, 361 B.R. 369, 398 (Bankr. S.D.N.Y. 2007).

principal received loans and personal payments upwards of $347,000 but his salary was approximately $100,000 per year).

Additionally, "if the debtor receives property . . . that is substantially equivalent in value to the property given or obligation incurred by him in exchange, then the transaction has not significantly affected his estate and his creditors have no cause to complain." *Rubin v. Mfrs. Hanover Trust Co.*, 661 F.2d 979, 991 (2d Cir. 1981). As for the element of good faith, where "a transferee has given equivalent value in exchange for the debtor's property, the statutory requirement of 'good faith' is satisfied if the transferee acted without either actual or constructive knowledge of any fraudulent scheme." *HBE Leasing I*, 48 F.3d at 636 (citing *Atlanta Shipping Corp. v. Chem. Bank*, 818 F.2d 240, 249 (2d Cir. 1987)). "The 'good faith' in § 272 is the good faith of the transferee . . . ." *HBE Leasing II*, 61 F.3d at 1059 n.5; *see also Sharp*, 403 F.3d at 54 n.4.

Whether payments by a debtor to a third party's mortgagee in lieu of rent constitutes fair consideration depends upon the facts and circumstances surrounding the payments. Arguably, fair consideration would not be present if a debtor is making rent payments to a third party as well as making payments on that third party's mortgage. *Mendelsohn v. Nat'l Westminster Bank, U.S.A. (In re Frank Santora Equip. Corp.)*, 256 B.R. 354, 366 (Bankr. E.D.N.Y. 2000) (finding that debtor did not receive fair consideration in exchange for making variable monthly payments to defendant-mortgagee to satisfy mortgage obligation of the debtor's shareholder where during the same period, the debtor also made regular fixed monthly payments to the shareholder that were likely the rent payments under a net lease).

However, where payments to the landlord's mortgagee are made in lieu of rent and the amount paid is reasonably equivalent, then the transfer may not be a fraudulent transfer. In *Reinbold v. Morton Cmty. Bank (In re Mid-Illini Hardwoods, LLC)*, 576 B.R. 598, 605-06

(Bankr. C.D. Ill. 2017), the bankruptcy court applied Illinois' fraudulent conveyance statute, which is similar to NYDCL § 273.[13] There, the debtor was formed by its principals, the Newnams, to operate a sawmill and the Newnams took out a mortgage with Morton Community Bank ("MCB") to purchase the sawmill property. From November 2010 until August 2011, the Newnams required the debtor to make payments directly to MCB on their mortgage in lieu of rent even though no written lease agreement existed at that time. In October 2011, a written lease went into effect and the debtor began making rent payments to the Newnams instead of MCB and the memo-portion of the rent checks referenced the sawmill lease. The court found "the evidence supports the conclusion that the [d]ebtor's direct payments to MCB were intended to kill two birds with one stone, by satisfying the Newnams' mortgage obligation to MCB and the [d]ebtor's rent obligation to the Newnams with one check." *Id.* at. 605. The debtor's ability to use the Newnams' land to operate the sawmill constituted consideration of a "reasonably equivalent value" for its payments to MCB. Unlike *Frank Santora Equip.*, it was clear the debtor's payments to MCB were in lieu of rent because the debtor was not also making payments to the Newnams. Moreover, the trustee also could not avoid the mortgage payments made by the debtor during the period when no written lease existed. *Id.* at 606. In the absence of a lease, the tenancy becomes month-to-month under Illinois law, but the tenant is still obligated to pay the agreed upon rent and remains

---

[13] Section 5(a) of the IUFTA states:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> * * *
>
> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>> (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>> (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

740 Ill. Comp. Stat. Ann. 160/5 (West 2022).

liable for the reasonable value of the occupancy. *Id.* Thus, the court found that the debtor's payment to MCB satisfied the debtor's own liability to pay rent to the Newnams and such payment constituted a satisfaction of a contractual debt that was reasonably equivalent value. *Id.* at 607.

Here, the assembled testimony convincingly establishes that the Debtors were making payments directly to defendant in lieu of rent to Jin and received the benefit of use and occupancy of the Real Property. There is no evidence in the trial record that the Debtors were also paying Jin rent in addition to making monthly payments on Jin's mortgage. Whether the Debtors paid Jin's mortgage in lieu of rent or paid rent directly to Jin, such payment was made in exchange for use and occupancy of their residence. No evidence was introduced at trial from which the Court can draw any inference that the Transfers to defendant were not in lieu of rent, that the amounts paid were greater than the market rent in the area, and that the Debtors did not have any obligation to pay for use and occupancy of the Real Property. Further, notably absent from the trial record is any evidence that the Debtors engaged in any fraudulent scheme in making payments in lieu of rent directly to defendant. As such, there is no evidence that defendant had actual or constructive knowledge of any fraudulent scheme that would call into question its good faith in accepting the payments from the Debtors.

Accordingly, based on the evidence at trial, the Court concludes that plaintiff has failed to prove by a preponderance of the evidence that (i) the value received by the Debtors was so disproportionally small as compared to the amount of each of the Transfers as to constitute a lack of fair consideration or that such exchange was not made in good faith, and (ii) the Transfers diminished the Debtors' estate and adversely affected creditors.

Having determined that the Debtors received fair consideration for the payments to defendant, the Court need not address the factors under NYDCL § 273.

3.   11 U.S.C. § 548(a)(1)(B)

Plaintiff also seeks to avoid payments aggregating $46,552.11 made by the Debtors to defendant within two years of the Petition Date as fraudulent transfers under § 548(a)(1)(B). Section 548(a)(1)(B) of the Bankruptcy Code provides:

> (a) (1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> * * *
>
> (B) (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>    (ii) (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation . . . .

11 U.S.C. § 548(a)(1)(B). "[T]here is no precise formula to ascertain what constitutes a reasonably equivalent value" under § 548, but that the definition of fair consideration set forth in NYDCL § 272 is sufficient. *Curtina*, 23 B.R. at 974. As discussed above, courts have noted that "reasonably equivalent value" under § 548(a)(1)(B) and "fair consideration" under NYDCL § 272 have the same fundamental meaning, *Akanmu*, 502 B.R. at 130-31 but the difference, however, is that NYDCL § 272 requires that "fair consideration" be given in good faith, *MarketXT Holdings Corp.*, 361 B.R. at 398.

Under § 548(a)(1)(B), a debtor receives reasonably equivalent value in exchange for payments made on a mortgage or secured financing obligation of a third-party if the debtor had use of the property that is the subject of the mortgage or secured financing. In *Pereira v. Wells Fargo Bank (In re Gonzalez)*, 342 B.R. 165, 169 (Bankr. S.D.N.Y. 2006), the debtor paid the mortgage obligation of the mother of his child to ensure his child had a proper home and stayed at the home only on weekends. *Id.* at 167. The trustee sought to avoid each

17

mortgage payment the debtor made throughout the most recent year under § 548 because the debtor had no legal obligation to support his child and was not married to the child's mother. *Id.* at 169. The court found the debtor received not only "psychic and other intangible benefits" in making these payments, but also economic value from occupying the home on weekends. *Id.* If the debtor did not make these payments, the mother of his child would have lost the property, and the debtor's use of the premises would have been impossible. *Id.* at 173. The fact debtor stayed at a different residence on weekdays did not diminish the reasonable equivalence of his received economic value. *Id.* at 172-73. The lack of any lease agreement between the debtor and the mother of his child did not seem to have any bearing on the court's decision. *Id.* Therefore, a debtor's mere use of property on weekends may constitute reasonably equivalent economic value under § 548 under such circumstances. *Id.* at 172.

Similarly, a party who is not obligated on a loan for personal property but contributes to expenses in exchange for use of the personal property has also been found to have received reasonably equivalent value. *Satriale v. Key Bank USA, N.A. (In re Burry)*, 309 B.R. 130, 138 (Bankr. E.D. Pa. 2004). In *Burry*, the debtor and a third party, Stillman, orally agreed to purchase a boat and split its costs. *Id.* at 133. Due to the debtor's poor credit history, Stillman was the sole borrower on the loan obtained to purchase the boat. *Id.* The debtor made half of the loan payments even though he was not personally obligated on the loan. *Id.* at 137. The trustee argued the debtor did not receive a reasonably equivalent value from the lender in exchange for these payments and sought to avoid the payments the debtor made to the lender under § 548. *Id.* The court disagreed and concluded that the debtor's agreement to split costs of owning the boat and use and enjoyment of the boat constituted a reasonably equivalent value for the payments made to the lender. *Id.* Thus, the payments to the lender were not avoidable under § 548.

These cases are instructive, and the evidentiary record here supports the conclusion that the Debtors received reasonably equivalent value, to wit, use and occupancy of the Real Property, in exchange for making payments to defendant in lieu of rental payments directly to Jin. Additionally, having found that the Debtors received fair consideration under NYDCL § 272, the Court similarly finds that the Debtors received reasonably equivalent value under § 548 in exchange for the payments made within two years of the Petition Date. Accordingly, based on the evidence presented at trial, the Court concludes that plaintiff has not met his burden of establishing that payments received by defendant within two years of the Petition Date totaling $46,552.11 must be avoided as constructively fraudulent under § 548(a)(1)(B).

### C.  Actual Fraudulent Conveyance Claim

Plaintiff challenges the Transfers as a transaction involving actual fraud and asserts that the Transfers must be avoided under NYDCL § 276 and recovered for the benefit of the estate under NYDCL § 278 and § 550. NYDCL § 276 provides that "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." N.Y. DEBT. & CRED. LAW § 276.

#### 1.  Burden of Proof

To prevail on his claim of actual fraud, plaintiff must prove by clear and convincing evidence that the Transfers were made the Debtors with actual intent to hinder, delay, or defraud creditors. *United States v. McCombs*, 30 F.3d 310, 328 (2d Cir. 1994); *Jacobs*, 394 B.R. at 661. Proof by clear and convincing evidence means that when all of the evidence is considered, the trier of fact is convinced that it is highly probable that it is true. *See Colorado v. New Mexico*, 467 U.S. 310, 316 (1984).

2. NYDCL § 276

Under NYDCL § 276, it is the intent of the transferor, and not of the transferee, that is dispositive. *HBE Leasing II*, 61 F.3d at 1059 n.5. "'[W]here actual intent to defraud creditors is proven, the conveyance will be set aside regardless of the adequacy of the consideration given." *McCombs*, 30 F.3d at 328; *Sharp*, 403 F.3d at 56.

Because actual intent is rarely shown by direct evidence, courts use "badges of fraud" to support an inference of an intent. *Sharp*, 403 F.3d at 56; *HBE Leasing I*, 48 F.3d at 639. These badges of fraud include:

> (1) the lack of or inadequacy of consideration;
> (2) the family, friendship or close associate relationship between the parties;
> (3) the retention of possession, benefit or use of the property in question;
> (4) the financial condition of the party sought to be charged both before and after the transaction in question;
> (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and
> (6) the general chronology of the events and transactions under inquiry.

*Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582-83 (2d Cir. 1983). A showing of multiple badges of fraud can establish clear and convincing evidence of actual intent. *Kramer v. Sooklall (In re Singh)*, 434 B.R. 298, 311-12 (Bankr. E.D.N.Y. 2010) (citation omitted).

While plaintiff asserts a cause of action under NYDCL § 276, at trial, plaintiff did not argue or present evidence that the Transfers were made by the Debtors with actual intent to hinder, delay, or defraud creditors. Rather, as noted above, plaintiff placed primary emphasis on his allegation that the Transfers must be avoided as constructively fraudulent conveyance under both NYDCL § 273 and § 548(a)(1). Accordingly, based on the trial record, the Court concludes that plaintiff failed to carry his burden of proof that the Transfers were made by the Debtors with actual intent to hinder, delay, or defraud creditors.

### D.  Plaintiff's Demand for Attorney's Fees

Plaintiff has made a demand for attorneys' fees under NYDCL § 276-a. That section provides for recovery of attorneys' fees if a "conveyance is found to have been made by the debtor and received by the transferee with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud present or future creditors." N.Y. DEBT. & CRED. LAW § 276-a. Under NYDCL § 276-a, plaintiff must establish actual intent by both the transferor and the transferee. *Gowan v. Patriot Group, LLC (In re Dreier LLP)*, 452 B.R. 391, 433 (Bankr. S.D.N.Y. 2011).

No evidence was introduced at trial from which the Court can draw any inference that the challenged Transfers were made by the Debtors and received by defendant with actual intent to hinder, delay, or defraud creditors. Accordingly, based on the evidenced at trial, plaintiff is not entitled to recover attorneys' fees under NYDCL § 276-a.

### E.  Unjust Enrichment

Plaintiff has the burden of proof to present evidence in support of his allegation that defendant was unjustly enriched and to prove that allegation by a preponderance of the evidence. *Marini v. Adamo*, 12 F. Supp. 3d 549, 552 (E.D.N.Y. 2014). As discussed above, "[t]he burden of showing something by a preponderance of the evidence . . . simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence . . . ." *Concrete Pipe*, 508 U.S. at 622; *see also Metro. Stevedore Co.*, 521 U.S. at 137 n.9.

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish 1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that 'equity and good conscience' require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000); *see also Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006); *Adamo*, 12 F. Supp. 3d at 552. "An indispensable ingredient of [an unjust enrichment] claim is that as between the two parties involved there must be an injustice."

*Songbird Jet Ltd. v. Amax Inc.*, 581 F. Supp. 912, 926 (S.D.N.Y. 1984) (citing *Indyk v. Habib Bank Ltd.*, 694 F.2d 54, 57 (2d Cir. 1982)). "The 'essence' of such a claim 'is that one party has received money or a benefit at the expense of another[,]'" *Kaye*, 202 F.3d at 616 (quoting *City of Syracuse v. R.A.C. Holding, Inc.*, 658 N.Y.S.2d 381, 382 (4th Dep't 1999)), and "[t]he essential inquiry in any action for unjust enrichment . . . is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered[.]" *Paramount Film Distrib. Corp. v. State*, 285 N.E.2d 695, 698 (N.Y. 1972) (internal citations omitted), *cert. denied*, *Paramount Film Distrib. Corp. v. New York*, 414 U.S. 829 (1973). "As long as the transferor received a benefit, . . . the transferee is not liable on an unjust enrichment claim." *Geltzer*, 502 B.R. at 138.

Because the Transfers were made for fair consideration, it cannot be said that the Transfers were made at the expense of the Debtors or their creditors. Accordingly, based on the evidence at trial, the Court finds that plaintiff has failed to show that defendant was unjustly enriched by the Transfers.

V.    Conclusion

For the reasons stated above, the Court finds that plaintiff has failed to meet his burden with respect to each claim alleged in the Amended Complaint. Accordingly, the Court shall enter judgment for defendant. Defendant shall submit a judgment in accordance with this Memorandum Decision.

So Ordered.

Dated: December 28, 2022
      Central Islip, New York



Louis A. Scarcella
**Louis A. Scarcella**
**United States Bankruptcy Judge**